UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JAMES SMITH and KATHLEEN
SMITH,

        Plaintiffs,

v.

                                                 Case No. 6:25-cv-189-JA-LHP

WESTGATE RESORTS, LTD.,

        Defendant.

_____

## ORDER

This case is before the Court on the Motion for Sanctions (Doc. 23) filed under Federal Rule of Civil Procedure 11(c)(2) by Defendant, Westgate Resorts, Ltd. Having considered the history of the case and the arguments presented in the parties' filings and at two hearings, the Court concludes that Westgate's motion is due to be denied but that sanctions against attorney John P. Abrams and The Timeshare Law Firm, L.L.C. are warranted under Rule 11(c)(3) on the Court's own initiative.

## I.   BACKGROUND

In 2016 Plaintiffs, James and Kathleen Smith, purchased a timeshare interest from Westgate while vacationing in South Carolina. The interest the

Smiths purchased pertained to a resort in Williamsburg, Virginia. Having become unhappy with their purchase, the Smiths engaged The Timeshare Law Firm, L.L.C. (Timeshare) to sue Westgate. In January 2025, Timeshare lawyer Stephanie Parsons filed this lawsuit in a Florida state court, asserting thirteen claims.[1] (Compl., Doc. 1-1). The Complaint sought rescission of the Virginia purchase as well as compensatory and punitive damages. (*See id.*).

In early February 2025, Westgate removed the case to this Court. (*See* Doc. 1). Westgate then filed a motion to dismiss (Doc. 12), which it amended on February 24, 2025, to, among other things, include a certification under Local Rule 3.01(g) that Timeshare opposed the relief requested, (*see* Docs. 15, 16, & 17). On March 10, 2025, Parsons filed a Response in Opposition (Doc. 19) to the amended motion to dismiss, arguing against dismissal of the Smiths' claims. Four days later, on March 14, 2025, Westgate filed the Motion for Sanctions

---

[1] The thirteen claims asserted were: negligent misrepresentation (Count 1); fraudulent misrepresentation (Count 2); negligent concealment of public offering statement (Count 3); fraudulent concealment of public offering statement (Count 4); negligent concealment of successor liability (Count 5); fraudulent concealment of successor liability (Count 6); violation of the Real Estate Settlement Procedures Act (RESPA) (Count 7); violation of the Dodd–Frank Wall Street Reform and Consumer Protection Act (Count 8); negligent misrepresentation and "intentionally negligent" concealment of licensure (Count 9); violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) (Count 10); concealing the arbitration clause and mitigation limitation clauses (Count 11); violation of the Florida Timeshare Act (Count 12); and a claim for attorney's fees, costs, damages, and punitive damages (Count 13). (*See* Doc. 1-1).

(Doc. 23) that is now before the Court.[2]

In the sanctions motion, Westgate argues that this case is one of 60 frivolous and "time-barred, cookie-cutter lawsuits" filed by Timeshare in Florida. (Doc. 23 at 1). According to Westgate, every substantive claim in the Complaint is factually frivolous, legally frivolous, or both, including claims that attack a nonexistent arbitration clause, seek relief under inapplicable federal law, and improperly rely on Florida law. (*See* Doc. 23). Parsons responded in opposition to Westgate's motions for sanctions on March 24, 2025. (*See* Doc. 27).[3]

The Court heard oral argument on the motion for sanctions (Doc. 23) and the amended motion to dismiss (Doc. 17) on April 22, 2025. (*See* Mins., Doc. 36; Tr., Doc. 40). Parsons appeared for Timeshare. During oral argument, it quickly became clear that Parsons had no relevant experience, that she was working alone with no guidance, and that she was filing complaints as directed by John P. Abrams—the owner of Timeshare—using a template. Parsons

---

[2] As required by Rule 11(c)(2), Westgate had served Parsons with a copy of the motion on February 20, 2025—three weeks before filing it. (*See* Doc. 23-10). When Parsons did not amend or withdraw the Complaint within the twenty-one day safe-harbor period provided by the rule, Westgate filed the motion with the Court.

[3] As discussed at oral argument, the response (Doc. 27) Parsons filed was largely copied from a response to a motion for sanctions filed by another law firm in the Southern District of Florida in an unrelated case. (*See* Tr., Doc. 40). Parsons changed a few details and deleted a few others, but the response was essentially a fill-in-the-blank effort. And as she did at oral argument, in her response Parsons relied on the local rules for the Southern District of Florida instead of those for the Middle District of Florida.

conceded that the Complaint was a shotgun pleading but argued that many of the claims in it were justified because she had heard the same stories from timeshare owners over and over, concluding that "where there's smoke, there's fire." (*See* Doc. 40 at 19).

Parsons' argument in defense of the asserted claims confirmed what was evident from her filings—she was unfamiliar with the Federal Rules of Civil Procedure and the Local Rules of the Middle District of Florida. It also became clear that in filing complaints for Timeshare, Parsons—a lawyer licensed in Florida—was acting more as a filing clerk than as a lawyer. Her job was to fill in the names of the parties on the template and file the complaints, and that is what she did.

Parsons was the only lawyer working for Abrams on January 9, 2025,[4] when she signed and filed this lawsuit in state court on behalf of Timeshare. Parsons' only legal experience before working with Abrams was as a small-town lawyer practicing family law. She had no experience in timeshare law and had never filed an appearance in federal court. When Parsons began working for Timeshare in July 2024, Abrams told her "to start moving the cases and filing." (Doc. 40 at 66); *see also Long v. Westgate Resorts, Ltd.*, No. 6:24-cv-2112 (M.D.

---

[4] Parsons stated that there may have been two remote Timeshare attorneys that she had not worked with, although she spoke to one attorney "on the phone a few times" and exchanged "a couple emails" with him. (Doc. 40 at 68).

Fla.) (Doc. 46 at 16 (Parsons stating at show-cause hearing before another judge in this division on July 25, 2025, that she and Timeshare "filed numerous complaints because . . . the firm was drastically behind and these clients needed help, and [Parsons] thought that's what [she] was doing")).

Following instructions, Parsons prepared complaints using the Timeshare template. She was able to satisfy Abrams' demands by filing 60 complaints during her first six months with Timeshare. She accomplished this feat by filling in the blank spaces on the template without conducting even the most minimal investigation. (*See* Doc. 40 at 67–68); *see also Long*, No. 6:24-cv-2112 (Doc. 46 at 15). Each lawsuit that Parsons filed asserts the same thirteen claims with the same language as the Complaint in this case. (*See* Doc. 45 & exhibits thereto). Parsons explained that she believed the template she had been provided was "correct," so she just "filled in the blanks." (Doc. 40 at 59, 68); *see also Long*, No. 6:24-cv-2112 (Doc. 46 at 15). She followed that fill-in-the-blank practice in preparing the Complaint she filed in this case.

After oral argument on Westgate's motions, the Court issued an order to show cause to Abrams, offering him an opportunity to explain why sanctions should not be imposed against him and Timeshare based on the pursuit of frivolous claims in this Court. (*See* Order, Doc. 37). On May 6, 2025, Abrams appeared at a show-cause hearing and gave a lengthy, self-serving description

of his career and his practice, advocated for some of the Smiths' claims,[5] and failed to show cause why sanctions should not be imposed against him. (*See* Mins., Doc. 41; Tr., Doc. 43).[6] After the hearing, Abrams was afforded an opportunity to explain in writing why he should not be sanctioned, (*see* Doc. 62 at 2), but his response (Doc. 67) failed to do so. The Court issued a second order to show cause to Abrams on July 23, 2025. (Doc. 68). Abrams' response—filed more than two weeks late—recited that he had "no more new information . . . and c[ould] only advise the Court of the circumstances as" he had previously. (Doc. 75).

As revealed by the two hearings and the written filings, Abrams holds Timeshare out as a law firm specializing in representing timeshare owners seeking relief from developers. (*See, e.g.*, Doc. 43 at 11). But Timeshare is not a law firm in the traditional sense. Abrams is licensed to practice law in the state of Washington, but he is not licensed in Florida. Since opening an office in Melbourne Beach, Florida, in 2022, Abrams has engaged several lawyers

---

[5] (*See, e.g.*, Doc. 43 at 31–32 (Abrams describing the purported "successor liability" clause in the Smiths' contract)).

[6] Meanwhile, on April 30, 2025, the Court granted Westgate's amended motion to dismiss, dismissed the Complaint (Doc. 1-1) without prejudice, and allowed the Smiths to file an amended complaint. (Order, Doc. 38). Through Parsons, the Smiths filed an Amended Complaint (Doc. 57) on May 30, 2025. That Amended Complaint was later dismissed with prejudice on Westgate's motion. (*See* Docs. 64 & 83). Westgate's motion for sanctions (Doc. 23) pertains only to the initial Complaint (Doc. 1-1).

licensed in Florida, including Parsons, to file lawsuits on behalf of timeshare owners. (*See* Doc. 43 at 42–43). He refers to these lawyers as "contract attorneys" who are not permitted to bill him for more than forty hours a week. (*Id.* at 14–15).

It is not surprising that this lawsuit—like so many others filed by Timeshare in the Middle District of Florida and elsewhere—includes meritless claims. This abuse is inherent in Abrams' business model. He did not require that Timeshare lawyers have legal expertise because his goal was to file as many cases as possible in hopes that the defendants would settle. He has never tried a timeshare case but claims to have settled thousands of them. He explained that Timeshare is "knowledge-based, and everything is derived from [him] because [he has] lived through countless fraud schemes in the over 9,500 clients [that he has] got[ten] out of timeshares." (*Id.* at 12). Abrams lamented at the show-cause hearing: "If they [the timeshare companies] would just still let me settle . . . ." (*Id.* at 69).

At the time of oral argument on the motion for sanctions, there were approximately 100 pending cases filed by Timeshare. Most were filed in the Middle District of Florida. Abrams first said that none of the cases Timeshare had filed in Florida had been settled. (*Id.* at 47). Then, equivocating, he said that he could not recall any settlements. (*Id.*). Thus far, none of the cases Timeshare has filed in the Middle District of Florida have been successful via

7

trial or settlement.

Although Abrams proclaims to be an expert in the field, there is no evidence that he has given guidance to Timeshare's "contract attorneys" who file complaints for him. At the show-cause hearing, he tried mightily to distance himself from the work of his lawyers. He contended that it is they—not he—who are experts in timeshare law. (*See id.* at 35, 47–51 (stating that although he interviewed the Smiths in 2024, he would not have reviewed the contract before giving the case to Parsons; instead, that would be up to the "litigators" because he would not know anything about specific statutes asserted as bases for the Smiths' claims)).

## II.    LEGAL STANDARDS

The purpose of Rule 11 is to promote integrity in litigation by deterring frivolous filings. *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001). In furtherance of this purpose, the rule imposes requirements on those presenting papers in federal court and holds them accountable for violation of those requirements. Subsection (b) of Rule 11 provides in pertinent part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

8

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b)(1)–(3).

"Where, as here, a case is removed from state court, Rule 11 does not apply to pleadings filed before removal." *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1091 (11th Cir. 1994) (citing *Griffen v. City of Okla. City*, 3 F.3d 336, 339 (10th Cir. 1993)). However, "any subsequent federal court filings, such as those in opposition to a motion to dismiss, are sanctionable if they resulted in continuation of a baseless lawsuit." *Id.* And as explained in a note to Rule 11, "if after a notice of removal is filed, a party urges in federal court the allegations of a pleading filed in state court . . . , it would be viewed as 'presenting'—and hence certifying to the district court under Rule 11—those allegations." Fed. R. Civ. P. 11(b) & (c) advisory committee's note to 1993 amendment; *see also Danubis Grp., LLC v. Landmark Am. Ins. Co.*, 685 F. App'x 792, 802 (11th Cir. 2017) (finding that the district court did not err in imposing sanctions in removed case where attorney "made no effort to amend the complaint once the case was removed to federal court[] and in fact . . . continuously defended the complaint, as initially filed, until [the defendant] filed its motion to dismiss for

fraud").

Accountability for violation of the rule may be achieved by imposition of sanctions, either upon motion of a party or on the court's own initiative. Fed. R. Civ. P. 11(c). "When deciding whether to impose sanctions under Rule 11, a district court must conduct a two-step inquiry, determining '(1) whether the party's claims are objectively frivolous; and (2) whether the person [advocating the claims] should have been aware that they were frivolous.'" *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 942 (11th Cir. 2022) (quoting *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)).

## III.  DISCUSSION

Here, the Court has little trouble concluding both that the claims asserted in this case were objectively frivolous and that Timeshare should have been aware that they were frivolous.

### A.    Objectively Frivolous

As the Eleventh Circuit explained in *Gulisano*, "[a] factual claim is frivolous when it has no reasonable factual basis," and "[a] legal claim is frivolous when it has no reasonable chance of succeeding." 34 F.4th at 942. Here, some of the claims asserted were legally frivolous, some were factually frivolous, and some were both legally and factually frivolous.

The Court explained some of the problems with the Complaint's claims in the Order (Doc. 38) granting Westgate's amended motion to dismiss. Counts 1

10

through 4, 9, 10, and 12 were based on Florida law, which does not apply to this action. Counts 5 and 6—which alleged concealment of a "successor liability clause"—failed because it was not plausible that the clause of the contract relied upon by Timeshare could require that the Smiths' successors be bound by the contract. And Counts 7 and 8—which alleged, respectively, violations of the Real Estate Settlement Procedures Act (RESPA) and the Dodd–Frank Wall Street Reform and Consumer Protection Act (Dodd–Frank)—failed because those statutes do not provide the Smiths with a cognizable civil remedy. Count 11 alleged concealment of an arbitration clause that—as admitted by Parsons at oral argument—was not present in the Smiths' contract, and Count 13 was not a claim itself but merely a list of desired remedies ("attorney's fees, costs, damages, and punitive damages"). Moreover, all of the Smiths' claims were time-barred, regardless of whether the statutes of limitations of Florida, South Carolina, or Virginia applied to them.

Presented with the prospect of being sanctioned, neither Parsons nor Abrams cited any authority supporting Timeshare's far-fetched theory that because Westgate is a Florida corporation, Florida law applies and its agents are required to have a Florida real estate broker's license to sell property in another state. And in addition to being brought under inapplicable Florida law, Counts 3 and 4—which assert that the Smiths made a "timeshare points purchase" or bought an interest in a multisite timeshare plan—are factually

11

frivolous.[7] (*See* Order, Doc. 38, at 5 n.1). Florida law provides that a multisite timeshare plan is one under which "a purchaser obtains . . . a recurring right to use and occupy accommodations or facilities of more than one" specific geographic site. § 721.52(4), Fla. Stat. Again, the Smiths' purchase pertained only to a site in Virginia. Additionally, the Complaint was replete with allegations referencing timeshare points. (*See, e.g.*, Doc. 1-1 ¶¶ 20, 29, 31, 45, 54, 57, 58, 59, 61, 62, 72, 74–79, 94). Yet at the hearing on the Rule 11 motion, Parsons denied that the Complaint made allegations that the Smiths had purchased timeshare points, (*see* Doc. 40 at 68), and acknowledged that the Smiths' purchase involves "a deed," (*id.*).

Other reasons for the claims' factual and legal frivolousness were discussed at the April 22 and May 6 hearings. (*See* Docs. 40 & 43). In sum, the claims initially asserted on behalf of the Smiths were objectively frivolous.

## B.    Reasonable Investigation

It is also clear that Timeshare should have been aware of the legal and factual frivolousness of the claims it asserted in this case. No Timeshare attorney engaged in any meaningful investigation before filing this suit, responding to Westgate's amended motion to dismiss, or continuing to advocate

---

[7] Westgate explained at oral argument that "a multi-site . . . timeshare . . . is typically represented by a points program." (Doc. 40 at 38). Purchasers of timeshare points "get the right to use accommodations at [the] resorts." (*Id.*).

the Smiths' claims in this Court.  The flaws in the claims are the product of Timeshare's mass filings using a fill-in-the-blank template intended to target contracts for multisite purchases executed in Florida.  Unfortunately, this "throw it on the wall and see what sticks" approach is not unique to this case. There are many suits that have been pursued by Timeshare in this district that are nearly identical to the Smiths' and that rarely add any unique factual allegations or claims.[8]

It is apparent that no Timeshare attorney who worked on this case read

---

[8] *See Best v. Hilton Grand Vacations, Inc.*, No. 6:25-cv-279; *Brandon v. Hyatt Vacation Ownership, Inc.*, No. 6:25-cv-340; *Brewer v. Cap. Resorts Grp.*, No. 8:25-cv-461; *Cohen v. Marriott Vacations Worldwide, Corp.*, No. 6:24-cv-2168; *Cole v. Westgate Resorts, Ltd.*, No. 6:24-cv-1852; *Darger v. Travel + Leisure, Inc.*, No. 6:25-cv-858; *Diamond v. Marriott Vacations Worldwide, Corp.*, No. 6:25-cv-175; *Dietl v. Hilton Grand Vacations, Inc.*, No. 6:25-cv-654; *Eckert v. Hilton Grand Vacations, Inc.*, No. 6:25-cv-294; *Eugster v. Hilton Grand Vacations Inc.*, No. 6:25-cv-25; *Farrington v. Hilton Grand Vacations, Inc.*, No. 6:25-cv-384; *Fellman v. Travel + Leisure, Inc.*, No. 6:25-cv-464; *Harklerode v. Hilton Grand Vacations, Inc.*, No. 6:24-cv-2115; *Herman v. Sapphire Resorts*, No. 8:25-cv-534; *Holzworth v. Hilton Grand Vacations, Inc.*, No. 6:24-cv-2298; *Horner v. Cap. Resorts Grp., LLC*, No. 8:25-cv-607; *Lapilio-Schultz v. Westgate Resorts, Ltd.*, 6:25-cv-126; *Long v. Westgate Resorts, Ltd.*, No. 6:24-cv-2112; *McCorquodale v. Cap. Resorts Grp., LLC*, No. 8:25-cv-504; *McGrath v. Marriott Vacations Worldwide, Corp.*, No. 6:25-cv-523; *McIntosh v. Hilton Grand Vacations, Inc.*, No. 6:25-cv-487; *Nelson v. Cap. Resorts Club, Inc.*, No. 8:24-cv-2902; *Ola v. Sheraton Flex Vacations, LLC*; *Ostin v. Westgate Resorts, Ltd.*, No. 6:25-cv-789; *Palermo v. Marriott Vacations Worldwide Corp.*, No. 6:25-cv-777; *Quiroz-Saltos v. Hilton Grand Vacations, Inc.*, No. 6:25-cv-422; *Rishoi v. Marriott Vacations Worldwide, Inc.*, No. 6:24-cv-1813; *Ronda v. Westgate Resorts LTD.*, No. 6:24-cv-2335; *Seidler v. Marriott Vacations Worldwide, Corp.*, No. 6:24-cv-2350; *Shull v. Cap. Resorts Grp., LLC*, No. 8:24-cv-2667; *Slater-Romines v. Hilton Grand Vacations, Inc.*, No. 6:24-cv-1881; *Smith v. Hilton Grand Vacations, Inc.*, No. 6:25-cv-218; *Spencer v. Westgate Resorts, Ltd.*, No. 6:24-cv-1924; *Stanton v. Hilton Grand Vacations, Inc.*, No. 6:25-cv-329; *Vest v. Cap. Resorts Grp., LLC*, No. 8:24-cv-2965; *Wahl v. Hilton Grand Vacations Inc.*, No. 6:25-cv-145; *Wacker v. Cap. Resorts Grp., LLC*, No. 8:25-cv-599; *Whatley v. Hilton Grand Vacations, Inc.*, No. 6:24-cv-1922.

the contract or the statutory law asserted as bases for the claims. Even a casual investigation would have revealed that the state law claims were frivolous. The contract itself made clear through its choice-of-law provision that Florida's substantive law did not apply to the Smiths' transaction. And if Parsons had bothered to read the Florida statutes that she relied on, she would have learned that they did not apply to this transaction in any event.

Timeshare's lack of reasonable investigation is obvious from Parsons' straining to justify post-hoc the inclusion of Florida law claims. At oral argument, Parsons had no support for her argument that Florida's substantive law applies to the Smiths based on the contract's Florida forum-selection clause and Westgate's incorporation in, and business in, Florida.[9] Parsons later filed a written supplement to her argument in which she cited *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)—obviously confusing choice of law, venue, and jurisdiction. (*See* Doc. 44 at 3).

The same lack of reasonable investigation is evident in the federal claims asserted under RESPA and Dodd–Frank. Neither of these statutes provides a private right of action under the facts of this case. And even if RESPA did

---

[9] The contract's forum-selection clause required the Smiths to bring suit "only and exclusively in" "the courts of the State of Florida, Orange County" or "the United States District Court for the Middle District of Florida." (Doc. 23-1 ¶ 22.b.).

14

apply, a cursory review of the closing documents would have shown that the required RESPA disclosures were indeed made. (*See* Doc. 23-5).

Likewise, review of the deed demonstrates that the Smiths purchased an interest in a single timeshare site, not timeshare points or an interest in a multisite timeshare. Parsons admitted that prior to filing this lawsuit she did not know what a multisite timeshare was, and she did not bother to find out. She included these allegations "[b]ecause [Timeshare] function[s] off of the multisite timeshare for all of [its] complaints." (Doc. 40 at 70).

And no reasonable lawyer would pursue a claim alleging wrongful concealment of an arbitration clause without first reading the parties' contract. But that's what happened here. If Parsons or Abrams had read the Smiths' contract, they would have seen that it did not include an arbitration clause. The baseless claim that Westgate concealed an arbitration provision is a striking example of Timeshare's failure to engage in a reasonable investigation prior to bringing this suit or responding to Westgate's amended motion to dismiss. As is the case with the other frivolous claims, this claim was included only because it was in the Timeshare template that Abrams directed Parsons to use.

The Court concludes that Timeshare did not engage in a reasonable investigation before filing this suit, before making other filings in this Court pursuing the claims, or advocating those claims in open court. It is apparent

that even after receiving Westgate's notice of intent to file the Rule 11 motion, after the filing of the motion, and after the April 22 hearing, Timeshare did nothing to investigate its erroneous assertions.

### C.    Sanctions

Although Parsons was initially the focus of the motion for sanctions, that focus shifted to Abrams during the April 22 hearing. (*See, e.g.*, Doc. 40 at 78–79 (Westgate's counsel suggesting that the Court could "fashion a . . . remed[y]" involving Abrams and start by issuing him a show-cause order). As noted at that hearing, the Court concluded that Parsons was "in over her head." (*Id.* at 78). Her conduct in this case was unprofessional and irresponsible, but she did not act maliciously or in bad faith. She simply followed Abrams' instructions. Indeed, counsel for Westgate acknowledged at oral argument, "I think there's only one person that is truly responsible for this, and it's John Abrams. . . . I think the most appropriate thing to do would be to go to the source." (*Id.* at 87). The Court will not issue Rule 11 sanctions against Parsons in this case.[10]

However, the Court finds it necessary, on its own initiative under Rule 11(c)(3), to sanction Abrams and Timeshare. The advisory committee note to Rule 11 instructs that "[t]he sanction should be imposed on the persons . . . who

---

[10] Abrams himself urged against Parsons being sanctioned. (*See* Doc. 43 at 61 (describing Parsons and other Timeshare attorneys as "pure of heart" and stating that Parsons "should not be sanctioned for anything")).

have violated the rule or who may be determined to be responsible for the violation." Fed. R. Civ. P. 11(b) & (c) advisory committee's note to 1993 amendment. Here, Abrams is the person responsible. And the text of Rule 11 provides that "[a]bsent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c)(1). Thus, Timeshare will be held jointly responsible with Abrams.

As noted earlier, after the April 22 hearing the Court issued a show-cause order to Abrams regarding whether he and Timeshare should be sanctioned under Rule 11. Abrams appeared at a May 6 hearing and later filed responses to the Court's inquiries. But after repeatedly being given notice of the Court's concerns and opportunities to be heard on the matter, Abrams did not satisfy the Court that sanctions are not warranted against him and Timeshare.

Hiring minions to follow his directions in filing complaints and pursuing claims was essential to Abrams' operation. He held himself out as an expert in getting relief for disgruntled timeshare purchasers. But because he was unlicensed to practice law in Florida, he contracted with members of the Florida Bar to file cases using the template that he provided them. He referred to these lawyers as "litigators"—hardly an apt title for Parsons, who had never appeared in federal court and whose experience was limited to family law. When she signed on with Timeshare as a "contract attorney" she was shown a backlog of

17

cases and was directed to file them using the template, and she followed those directions. Abrams used Parsons and other "litigators" to attempt to shield himself from accountability. [11] And once brought into Court, Abrams defended and promoted the baseless claims his firm had pursued in this case.

Under the facts of this case, holding Abrams accountable furthers the purpose of Rule 11—to deter frivolous filings and uphold the integrity of our judicial system. Thus, the Court finds that Abrams—the owner of Timeshare—violated Rule 11 by directing Parsons—an inexperienced lawyer and the only other lawyer in the firm at the time—to pursue frivolous claims. He and Timeshare thus will be sanctioned under Rule 11. The Court finds that a reprimand and a monetary penalty of $5000 are "suffic[ient] to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

## IV.   CONCLUSION

Timeshare's pursuit of frivolous claims in this case constitutes a blatant disregard of Rule 11's requirements. The imposition of sanctions is necessary to protect the integrity of the Court and deter the pursuit of frivolous claims by

---

[11] Parsons resigned from Timeshare on May 7, 2025. (*See* Doc. 74 at 1). In an attempt to cure issues with Timeshare's Florida operations, Abrams hired two lawyers admitted to practice in Florida—Jillian Rice and Duane Henry—to share in Timeshare's equity. (*See id.*; *see also* Doc. 67). Rice and Henry began with Timeshare in mid-June 2025, but by August 10, Henry had resigned, and Rice resigned on August 18. (Doc. 74 ¶ 5).

Abrams and those acting at his direction. Furthermore, the Court has an ethical duty to report Abrams' conduct to the Florida Bar and the disciplinary arm of the Washington State Bar Association. Accordingly, it is **ORDERED** that:

1.    Westgate's Motion for Sanctions (Doc. 23) is **DENIED**.

2.    On the Court's own initiative under Federal Rule of Civil Procedure 11(c)(3), attorney John P. Abrams is **REPRIMANDED** for violating Federal Rule of Civil Procedure 11(b)(2) & (3).

3.    The Timeshare Law Firm, L.L.C.[12] and attorney John P. Abrams, jointly, shall pay $5,000.00 to the Clerk's Office, United States District Court for the Middle District of Florida, within thirty days from the date of this Order.

4.    The Clerk is directed to provide a copy of this Order to the Washington State Bar Association, Office of Disciplinary Counsel, 1325 4th Avenue, Suite 600, Seattle, WA 98101-2539, to determine whether the conduct of John P. Abrams, Washington Bar license number 31068, warrants further sanctions.

5.    The Clerk is directed to provide a copy of this Order to the Unauthorized Practice of Law Department of The Florida Bar, The Gateway Center, 1000 Legion Place, Suite 1625, Orlando, FL 32801.

---

[12] The Timeshare Law Firm has also been referred to as The Abrams Firm. (*See, e.g.*, Doc. 1-1 at 34 (email addresses)).

19

6.    The Clerk is directed to close this case.

**DONE** and **ORDERED** in Orlando, Florida, on March 31, 2026.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
John P. Abrams
Stephanie Parsons
Clerk of Court, Finance Department

20